**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SOPHIE P. TOULON, and all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CNA FINANCIAL CORPORATION )<br>and CONTINENTAL CASUALTY )<br>COMPANY, )<br>)<br>Defendants. ) | No. 15 CV 138 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

.

**I.     INTRODUCTION**

Plaintiff Sophie P. Toulon ("Ms. Toulon") has filed a putative nationwide class action against Continental Casualty Company ("Continental") and CNA Financial Corporation ("CNAF"). The complaint purports to bring claims for fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), fraud (Count III) and unjust enrichment (Count IV).

Ms. Toulon purchased a long-term care insurance policy from Continental in 2002.[1] In the complaint, she acknowledges that Continental has always had the contractual right to raise the policy premiums. Specifically, a worksheet provided to Ms. Toulon in connection with her application for the policy, and upon which the complaint is largely based, states that Continental "has a right to raise premiums in the future." Moreover, the policy itself states on the first page, in bold and all capitals: "**PREMIUMS SUBJECT TO CHANGE**."

Eleven years after the policy was issued, Continental exercised its contractual right and raised premiums.[2] Despite Continental's unambiguous disclosures, the complaint contends that plaintiff was misled about the possibility of premium increases. No affirmative misrepresentations concerning premium increases are alleged, however. Instead, the complaint relies on an alleged "implied misrepresentation" that (1) there never would be an increase in her premiums in the future, or (2) any increase would be limited to an undefined "nominal" amount.

The complaint should be dismissed. First, the complaint does not allege any statements that could plausibly imply a misrepresentation regarding the likelihood or amount of future rate increases. Second, implied representations regarding hypothetical future events cannot form the basis of an intentional or negligent misrepresentation claim. Third, the complaint does not allege justifiable reliance and cannot possibly allege intent to mislead. Fourth, the negligent

---

[1] She alleges no relationship with CNAF.
[2] Plaintiff does not allege that she received a prior premium increase.

1

misrepresentation claim also fails because defendants are not in the business of supplying information. Fifth, the unjust enrichment claim fails for the same reasons as the fraud and misrepresentation claims it is founded upon, and also because unjust enrichment is not available where, as here, an express contract governs the parties' relationship. Finally, all claims against CNAF are subject to dismissal because the complaint makes no substantive allegations against that entity – nor could it ever – other than that it is the parent corporation of Continental.

## II.     BACKGROUND

Ms. Toulon, an Illinois resident, applied to Continental for a long-term care insurance policy in mid-2002. *See* Complaint, ¶15; *see also* Declaration of Jennifer Star ("Star Dec.") at Exhibit A.[3] Her husband, Gregory Toulon, was the agent who sold her the policy. Ex. A at 2, 6.

On September 25, 2002, plaintiff executed a "Long Term Care Insurance Personal Worksheet" (the "worksheet") provided by Continental. Complaint ¶15; Ex. B to Star Dec. As explained in the worksheet, Illinois law required Continental to ask plaintiff to complete the worksheet. *Id.* ("State law requires the insurance company to ask you to complete the worksheet to help you and the insurance company determine whether you should buy this policy."); *see also* 50 Ill. Adm. Code 2012.123(c)(2) (2002) (requiring issuers of long-term care insurance to present applicants with the worksheet contained in an exhibit to the regulation). The contents of the worksheet were also prescribed by Illinois regulation. 50 Ill. Adm. Code 2012.123.EXHF (2002). The regulations in effect in 2002 are attached for the Court's convenience as Exhibits 2 and 3 to this memorandum, and are also available on Westlaw.

The worksheet provided to plaintiff advised that Continental "has a right to increase premiums in the future" and asked questions, mandated by Illinois regulation, regarding

---

[3] The Star Declaration is attached to this Memorandum as Exhibit 1. As discussed below, the documents attached to the Star Declaration may be considered by the Court because they are referred to in the complaint and are central to the plaintiff's claims.

2

plaintiff's income and her ability to pay premiums if they were raised. Complaint ¶¶ 17, 29; Ex. B to Star Dec. Plaintiff did not complete the questionnaire, instead checking a box stating "I choose not to complete this information." Ex. B to Star Dec.[4] Ms. Toulon also filled out an "Authorization to Process Application" which stated that her agent, Mr. Toulon, had explained to her the importance of filling out the worksheet, and confirmed that she wanted Continental to continue to process her application although she had not filled out the worksheet. *Id.*

After receiving plaintiff's worksheet, Continental issued the policy and delivered it to Ms. Toulon on October 11, 2002. Exhibits C and D to Star Dec. Per plaintiff's request, the policy had an effective date of coverage as of July 15, 2002, the date she applied for the insurance. Ex. C to Star Dec. at p. 3. In bold capital letters, the first page of the policy states: "**PREMIUMS SUBJECT TO CHANGE**." Under that heading, the policy further explains: "[w]e cannot change Your policy without Your consent. However, We may change the premium rates. Any change will apply to all policies in the same class as Yours in the state where the policy was issued." *Id.*

Ms. Toulon was notified that her premiums would be increasing eleven years after receiving her policy. Complaint, ¶ 22. She then brought this putative class action lawsuit against Continental and CNAF. Without providing any particulars, Ms. Toulon's complaint vaguely alleges that "one or more" of the following statements in Continental's worksheet was somehow a "false statement of material fact:"

   a. "The company has a right to increase premiums in the future."

   b. "The company has sold long term care insurance since 1965 and has sold this policy since 1998."

   c. "The company has not raised its rates for this policy."

---

[4] Mr. Toulon, serving as Ms. Toulon's insurance agent, also checked a box stating "I explained to the applicant the importance of completing this information." *Id.*

3

    d. "However, the company did raise rates by 15% in 1995 on long term care policies sold seven to 12 years ago that provided essentially similar coverage."

    e. "Have you considered whether you could afford to keep this policy if premiums were raised, for example, by 20%?

Complaint, ¶¶ 37, 38. Ms. Toulon then asserts that these statements amount to an implied misrepresentation that "future premium increases would be nominal, if any at all . . ." Complaint, ¶46(a); *see also* Complaint, ¶¶ 6, 26, 41, 46(b)-(c), 54.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is both actionable as a matter of law and "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, under the heightened pleading standard of Rule 9(b), a plaintiff alleging fraud must state with particularity the circumstances of the alleged fraud. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008). To meet this standard, a plaintiff must specifically allege "the who, what, when, where, and how" of the fraud. *Id.* Finally, in determining the sufficiency of a plaintiff's allegations on a motion to dismiss, courts may consider documents that are referred to in the complaint and are central to the plaintiff's claims. Such documents are considered "part of the pleadings" for purposes of the motion to dismiss. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

4

IV.     ARGUMENT

    A.     **The Complaint Does Not Allege The Elements of Fraud**

Under Illinois law, a fraud claim requires allegations of a knowingly false statement by the defendant, with the intent to induce plaintiff to act, justifiable reliance by plaintiff, and damages resulting from that reliance.[5] *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000); *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008). The complaint fails to allege these necessary elements. Consequently, Count I (Fraudulent Misrepresentation), and Count III (Fraud) should be dismissed.[6]

    1.     **There is No Alleged Misrepresentation**

The complaint does not allege that Continental or CNAF made a misrepresentation of material fact concerning future rate increases. Rather, the complaint vaguely alleges that "one or more" of five statements made in the worksheet were somehow "false" when made. Complaint, ¶¶ 37, 38. The first statement identified by plaintiff – that Continental "has a right to increase premiums in the future" – is undeniably true and notified plaintiff of Continental's express contractual right to increase policy premiums. The complaint admits as much. Complaint, ¶¶ 29, 54. The next three statements in the worksheet – that Continental had sold long term care insurance since 1965 and had sold Ms. Toulon's policy form since 1998, that Continental had not raised rates on Ms. Toulon's policy form, and that Continental had raised rates by 15% on earlier but similar policy forms in 1995 – do not address future rate increases. But even if these 2002

---

[5] Illinois law applies to this dispute in which both plaintiff and defendants are Illinois residents and plaintiff's insurance contract was delivered to her in Illinois. *See, e.g., Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (1995), *as modified on denial of reh'g* (Oct. 2, 1995).
[6] Claims for "fraud" and "fraudulent misrepresentation" have the same elements. *Dilling*, 888 N.E.2d at 35-36. Likewise, to the extent plaintiff actually seeks to plead a claim for "fraudulent inducement to contract" in the count entitled "Fraud," the elements also would also be the same. *Lagen v. Balcor Co.*, 653 N.E. 2d 968, 973 (Ill. App. 1995).

statements were somehow material, the complaint does not even attempt to show with any particularity that they statements were untrue when made. The final statement in the worksheet – asking Ms. Toulon if she had "considered whether [she] could afford to keep this policy if premiums were raised, for example, by 20%?" – is not a representation of fact at all, but is simply a question that was required by Illinois regulations. *See* Exhibit 3.

The complaint suggests that the worksheet somehow implied that future rate increases would be only "nominal, if at all" or "under extreme circumstances, up to 20%." Complaint, ¶¶ 46, 41. But the worksheet does not say that and, again, the complaint concedes that Continental had the contractual right to raise rates. There is no quantitative limit to that right, either stated in the policy or in the worksheet. Whether considered separately or together, the five statements in the worksheet cannot plausibly be read to state or imply a representation, much less a promise, that a future increase would be "nominal." *Iqbal,* 556 U.S. at 678 (plaintiff must make allegations that are "plausible on [their] face").

Other courts viewing similar allegations in the context of long-term care insurance have agreed, holding that insurers could not have made misrepresentations regarding the scale of future rate increases where the policies at issue fully disclosed the insurers' rights to raise premiums. For example, in *Alvarez v. Insurance Company of North America*, 313 Fed. Appx. 465 (2008), the plaintiff asserted that his insurer made false representations by failing to disclose, among other things, that his policy was initially "underpriced" and that the "the actuarial assumptions and lapse rates were unsound." *Id*. at 467. Affirming dismissal of the plaintiff's putative class action complaint, the Third Circuit found that neither the policy nor promotional materials provided to the plaintiff contained any misrepresentations, as the insurer "did not have any duty to disclose the possibility of future premium increases or the underlying actuarial

assumptions for that possibility" and "the policy expressly reserved the right to raise premiums[.]" *Id.*; *see also Rakes v. Life Investors Ins. Co. of America*, 582 F. 3d 886 (8th Cir. 2009) (affirming summary judgment on putative class claim alleging that long-term care carrier used inflated lapse rates to purposefully under-price long-term care insurance because the carrier "disclosed its right to change premium rates on the first page of its policies, in boldface, capital letters").

### 2. The "Misrepresentation" Alleged By Plaintiff, Even If It Existed, Is Not Actionable

Even if the complaint did adequately allege that Continental made statements implying that any future premium increases would only be "nominal" (Complaint, ¶ 46), the misrepresentation claims would still would fail for two independent reasons.

#### a. Representations About Future Conduct Are Not Actionable

The general rule is that promises of future conduct, *even where they are express*, cannot form the basis of a misrepresentation claim. *See N. Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co.*, 263 F.2d 543, 545 (7th Cir. 1959) ("[a] failure to comply with a future promise does not constitute fraud"); *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 92 (Ill. App. 2002) ("[e]ven a false promise of future conduct with no current intent to fulfil [sic] that promise will not constitute fraud") (quotation omitted). The sole exception to this rule is for misrepresentations that are "part of a scheme employed to accomplish [] fraud." *Hindley v. Seltel, Inc.*, 672 F. Supp. 1093, 1096 (N.D. Ill. 1987) (citations omitted) (granting motion to dismiss). To fall within that exception, "a claimant must allege at least explicit promises of future performance and cannot rely on implied promises." *Id.; see also Sharff v. Pioneer Financial Services, Inc.*, No. 92-c-20034, 1993 WL 87718 at *3 (N.D. Ill. 1993) (granting motion to dismiss because "implied representations regarding future conduct do not constitute

7

actionable misrepresentation"); *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1370 (N.D. Ill. 1985) ("we hold that the threshold for bringing a fraud action under the scheme or device exception is not met where the claimant alleges no more than an implied promise or representation as the predicate for fraud"). Because the complaint depends on a supposed implied misrepresentation regarding future rate increases, the fraud claims fail.

### b. Statements of Opinion Are Not Actionable

The basis of a fraud claim "must be a statement of fact, not an expression of opinion." *Avon Hardware Co. v. ACE Hardware Corp.*, 998 N.E. 2d 1281, 1288 (Ill. App. 2013) (affirming dismissal of a fraud claim); *Prime Leasing,* 773 N.E.2d at 92 ("[t]o support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion"). Therefore, even if the complaint did plausibly allege that the statements in the worksheet amounted to a prediction concerning future premium increases (and it does not), such a representation would not be actionable.

Courts applying Illinois law have repeatedly held that "financial projections are considered to be statements of opinion, not fact." *Lagen,* 653 N.E. 2d at 973; *see also Illinois Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr. of S. Metro-E.*, 884 N.E.2d 700, 710 (2008) (dismissing complaint for fraud upon finding that "[t]he statement that INRMA did not have a cash-flow problem amounts to an opinion, and the statement that money would be set aside concerns future conduct"); *Nat'l Tech., Inc. v. Repcentric Solutions*, No. 13 C 1819, 2013 WL 6671796, at *4 (N.D. Ill. Dec. 18, 2013) (dismissing claims for fraud based on allegedly inaccurate projections of sales schedules and revenue); *GoHealth, LLC v. Simpson*, No. 13 C 02334, 2013 WL 6183024, at *10 (N.D. Ill. Nov. 26, 2013) (granting motion to dismiss fraudulent misrepresentation claims because predictions regarding "persistency rates," *i.e.*, rates

8

at which policies would remain in force for twelve month terms, are non-actionable future financial projections).

An assertion that rates would not be raised in the future beyond a "nominal amount" is a financial prediction, not an existing fact. Accordingly, any contention that Continental somehow misrepresented the likelihood of future premium increases and had made its projections based on a "flawed actuarial model" (Complaint ¶ 30) fails to state claims for misrepresentation.

### 3. The Complaint Fails to Allege Justifiable Reliance

Plaintiff's fraud claims require justifiable reliance by plaintiff on the allegedly false statement. *Houben,* 231 F.3d at 1074. Here, the complaint concedes that the worksheet – the foundation of plaintiff's claims – explicitly advised that "[t]he company has the right to increase premiums in the future." Complaint ¶ 17; Ex. B to Star Dec. Similarly, the policy advised in bold font that premiums are "**SUBJECT TO CHANGE**." Ex. C to Star Dec. In these circumstances, reliance on a supposed implied representation that premiums would remain unchanged (or would change only modestly) is not justifiable as a matter of law. *See, e.g., Carr v. CIGNA Securities, Inc.*, 95 F. 3d 544, 547 (7th Cir. 1996) (affirming dismissal of fraud claim where transactional documents directly disclosed the investment risk plaintiff contended he was misled about); *Quinn v. McGraw-Hill Cos., Inc.*, 168 F. 3d 331, 336 (7th Cir. 1999) (same); *see also Rakes v. Life Investors Ins. Co. of America*, 622 F. Supp. 2d 755, 767 (N.D. Iowa 2008), *aff'd,* 582 F. 3d 886 (8th Cir. 2009) (in putative class action challenging long-term care rate increase, summary judgment granted on fraud claim because "[d]efendant's numerous disclosures of its right to raise premiums negates any alleged misrepresentation or Plaintiffs' reasonable reliance on a belief their rates would not increase").

9

### 4. The Complaint Fails to Allege Intent

Plaintiff's fraud claims also require that CNA have made the allegedly false statement with the intent to induce her to act. *Sharff,* 1993 WL 87718 at *2. Because the statements in the worksheet were compelled by state law, any assertion that Continental had the intent to mislead is groundless.

As described above, regulations promulgated by the Illinois Department of Insurance, pursuant to its authority to regulate long-term care carriers,[7] required Continental to provide the worksheet and to make the statements which plaintiff alleges are "misrepresentations." *See* Exs. 2 and 3. The regulations specifically required Continental to provide plaintiff with a "Traditional Long-Term Care Insurance Personal Worksheet" and dictated the contents of the worksheet. Ex. 2. The worksheet tracks the required form contained in the regulations. *Id.*; Ex. 3. Given that Continental was under a regulatory mandate to make these statements, plaintiff cannot plausibly allege that defendants acted with the required intent. *See McDonald v. Schencker*, 18 F. 3d 491, 495 (7th Cir. 1994) (affirming dismissal of fraud claim where "there is simply nothing on the face of [plaintiff's] complaint which gives us any basis for believing that [defendant] possessed a fraudulent intent").

### B. The Complaint Does Not Allege the Elements of Negligent Misrepresentation

Negligent misrepresentation "involves the same elements as fraudulent misrepresentation, except that (1) the defendant need not have known that the statement was false, but must merely have been negligent in failing to ascertain the truth of his statement; and (2) the defendant must have owed the plaintiff a duty to provide accurate information." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012); *Lockwood v. Standard & Poor's*

---

[7] *See* 215 ILCS 5/351A-11; 215 ILCS 5/401.

*Corp.,* 682 N.E.2d 131, 134 (Ill. App 1997). Thus, the complaint's negligent misrepresentation (Count II) fails for the same reasons as the intentional misrepresentation claims (Counts I and III).

The claim fails for an additional reason as well. "To recover for negligent misrepresentation in Illinois, a plaintiff must prove that the defendant making the negligent misrepresentation is in the business of supplying information for the guidance of others in their business transactions." *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.,* 125 F.3d 468, 475 (7th Cir. 1997); *Landon v. GTE Communications Services Inc.*, 696 F. Supp. 1213, 1220 (N.D. Ill. 1988). This rule is derived from the economic loss doctrine, which posits that purely economic losses are generally not recoverable in tort and that contract law provides the proper remedy instead. *See First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 337 (2006). Illinois courts make a limited exception to the economic loss doctrine for the tort of negligent misrepresentation only where a defendant is in "the business of supplying information as opposed to providing something tangible." *Id.* at 335.

The complaint does not allege that defendants were in the business of providing information. Even if it did, the allegation would fail as a matter of law. Insurers provide "something tangible" as opposed to supplying information, and alleged misrepresentations made in the context of selling a contract of insurance cannot form the basis of a negligent misrepresentation claim. *First Midwest Bank,* 218 Ill. 2d at 340 (title insurer could not be held responsible under negligent misrepresentation theory for statements made in conjunction with selling an insurance contract); *see also University of Chicago Hospitals v. United Parcel Service*, 231 Ill. App. 3d 602, 606 (1992) (health insurer not in the business of supplying information, and cannot be held liable for negligent misrepresentation regarding insurance coverage); *cf. Wigod,*

11

673 F.3d at 573-74 (affirming dismissal of negligent misrepresentation claims brought by home mortgagee against mortgage servicer, because servicer did not have responsibility for handling plaintiff's "business affairs" and "any duty Wells Fargo may have had to provide accurate information to Wigod arose directly from their commercial and contractual relationship").

Because Continental is an insurer – a provider of policy benefits in exchange for a premium – and is not in the business of supplying information, its relationship with plaintiff is governed by their contract and the tort of negligent misrepresentation is not available to plaintiff. Accordingly, the claim for negligent misrepresentation (Count II) must be dismissed for this independent reason.

### C. The Complaint Does Not Allege a Viable Unjust Enrichment Claim

The claim for unjust enrichment (Count IV) incorporates the complaint's earlier allegations, including the allegations regarding the existence of a contract (Complaint, ¶ 52), and also alleges that defendants "secured the insurance contracts with policyholders . . . by means of fraudulent and/or negligent misrepresentations." Complaint, ¶ 53. This claim is subject to dismissal for two reasons.

To state a claim for unjust enrichment in Illinois, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F. 3d 511, 516 (7th Cir. 2011). Furthermore, "[w]hat makes the retention of the benefit unjust is often due to some improper conduct by the defendant" and "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517. Following this rule, numerous district courts in the Northern District have dismissed unjust enrichment claims where

12

the related claim has been dismissed. *See, e.g., Sadler v. Retail Properties of America*, No. 12 C 5882, 2014 WL 2598804 at *21 (N.D. Ill. June 10, 2014) (dismissing unjust enrichment claim grounded on breach of fiduciary duty claim where the breach of fiduciary duty claim was dismissed); *Enger v. Chicago Carriage Cab Co.*, -- F. Supp. 3d ---, No. 14 C 2117, 2014 WL 7450434 (N.D. Ill. December 19, 2014) (dismissing unjust enrichment claim grounded on breach of Illinois Wage Act where the Wage Act claim was dismissed).

The same result obtains here. The unjust enrichment claim is grounded on the supposed fraud and misrepresentation. Complaint, ¶¶ 52-53. Since the fraud and misrepresentation claims are subject to dismissal, the unjust enrichment claim is equally subject to dismissal. *Cleary,* 656 F. 3d at 516.

Furthermore, unjust enrichment cannot provide recovery when an express contract governs the relationship of the parties.[8] *People ex rel. Hartigan v. E & E Hauling, Inc.,* 607 N.E.2d 165, 177 (Ill. 1992) (affirming dismissal of unjust enrichment claim where complaint also asserted the existence of a contract because "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.") (quotation omitted). Here, the complaint alleges the existence of an express contract, the insurance policy. The unjust enrichment count not only incorporates earlier allegations regarding the existence of a contract (Complaint, ¶ 52), but also relies on and advances them. *See* Complaint, ¶ 53 (referring to "scheme to secure plaintiff's insurance contract"); ¶ 54 (referring to the contractual term that "permitted CNA to improperly raise rates far higher than a singular possible raise of 15%"). Courts routinely dismiss claims for unjust enrichment under

---

[8] There are two reasons for this rule. First, "[t]he theory of unjust enrichment is an equitable remedy based upon a contract implied in law," and if an express contract exists there is no room to imply one. *Nesby v. Country Mut. Ins. Co*., 805 N.E.2d 241, 243 (2004). Second, "[b]ecause it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Id.*

these circumstances. *See, e.g., Guinn v. Hoskins Chevrolet,* 836 N.E.2d 681, 704 (Ill. App. 2005) ("[w]hile a plaintiff may plead breach of contract in one count and unjust enrichment in others, it may not include allegations of an express contract which governs the relationship of the parties, in the count[] for unjust enrichment"); *Homestead Ins. Co. v. Chicago Transit Auth.,* No. 96–4570, 1997 WL 43232, at *4 (N.D. Ill. Jan. 23, 1997) (dismissing unjust enrichment claim because the claim "adopts by reference all the allegations in the contract claim…including paragraphs alleging an express contract between the parties").

Plaintiff agreed to purchase a policy that explicitly provides Continental the right to unilaterally raise rates, and she cannot do an end-run around that contract by relying on the equitable theory of unjust enrichment. Accordingly, her claim for unjust enrichment must be dismissed. *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (dismissing claim for unjust enrichment that asserted the existence of a contract).

### D. The Complaint Does Not State a Claim Against CNAF

All claims against CNAF also fail because the complaint does not plead that CNAF was responsible for any of the alleged wrongs in the complaint. The insurance policy and application make clear that the policy was issued by Continental and that Continental would process the claims under the policy. Ex. A to Star Dec., Ex. C to Star Dec. at 1, 12 (defining "We, Our, Us" as The Continental Casualty Company). Likewise, the upper right-hand corner of the worksheet also makes clear that the worksheet was provided by Continental. Ex. C to Star Dec. Accordingly, CNAF played no role in the alleged conduct at issue in the complaint.

Given that documents referenced and relied upon in the complaint establish that all relevant actions were undertaken by Continental, plaintiff's only real allegation against CNAF is that it is the parent organization of Continental. Complaint ¶¶ 1, 12. But parent corporations are not liable for the acts of their subsidiaries unless they directly caused the wrongful conduct or,

under exceptional circumstances, are liable under a veil-piercing theory. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th Cir. 2007) (referring to the "oodles of decisions" supporting the proposition that "parent corporations are not liable for the wrongs of their subsidiaries unless they cause the wrongful conduct (and so are directly liable) or the conditions of investors' liability ('piercing the corporate veil') have been satisfied"). The complaint contains no such allegations, and accordingly is insufficient to state a claim against CNAF. *Bright v. Roadway Servs., Inc.,* 846 F. Supp. 693, 700 (N.D. Ill. 1994) (granting motion to dismiss parent corporation where complaint only alleged that parent "own[ed] and control[led]" subsidiary corporation and "ratified" the subsidiary's alleged misconduct).

**V.  CONCLUSION**

For all the foregoing reasons, the complaint should be dismissed.

Dated: March 5, 2015

                                                CONTINENTAL CASUALTY COMPANY
                                                AND CNA FINANCIAL CORPORATION


                                                By: */s/ R. John Street*
                                                Michael L. McCluggage
                                                Brent R. Austin
                                                R. John Street
                                                EIMER STAHL LLP
                                                224 S. Michigan Avenue, Suite 1100
                                                Chicago, Illinois 60604
                                                (312) 660-7600
                                                *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on March 5, 2015, I caused a copy of the foregoing *Defendants' Memorandum In Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* to be filed electronically. Notice of this filing will be sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                         */s/ R. John Street*
                                         Attorney