# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SOPHIE P. TOULON,

    Plaintiff,

  v.

CONTINENTAL CASUALTY COMPANY,

    Defendant.

No. 15 CV 138

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

In 2002, plaintiff Sophie Toulon bought an insurance policy from defendant Continental Casualty Company. Although plaintiff reviewed a worksheet that said defendant had a right to raise premiums, plaintiff claims other portions of the same worksheet led her to believe that any price increase would be in the area of 20%. This belief proved wrong, however, when defendant raised premiums by more than 75% in 2013.

In this lawsuit, plaintiff claims defendant defrauded her by failing to disclose dubious assumptions it purposely made when pricing the policy. Plaintiff also claims the worksheet she reviewed gave the false impression that price increases would be unlikely, or at most moderately sized.

Defendant has moved under Rule 12(b)(6) to dismiss plaintiff's First Amended Complaint in its entirety. For the following reasons, the motion is granted and the complaint is dismissed without prejudice.

## I. Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must do so with particularity, which generally means a plaintiff must plead "the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). "In reviewing the sufficiency of a complaint under the plausibility standard, [the court] accept[s] the well-pleaded facts in the complaint as true . . . ." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). The plausibility test does not permit a court to disregard factual allegations simply because they seem unlikely. *Firestone Financial Corp. v. Meyer*, — F.3d —, 2015 WL 4720281, *3 (7th Cir. Aug. 10, 2015).

## II. Background

In 1998, defendant Continental Casualty Company introduced long-term care insurance policies under the series name "Preferred Solution." [23] ¶ 1. Plaintiff Sophie Toulon—a Preferred Solution subscriber—alleges defendant used intentionally unreasonable "lapse rate" assumptions to make the policies seem more

affordable than they were. *Id*. ¶ 15. In turn, these artificially low prices caused lower-income insureds to buy policies they could not afford, and allowed defendant to collect premiums from insureds who were unlikely to file claims. *Id*. ¶ 16. Once these insureds became more likely to make claims, defendant drove them out of the policies by increasing premiums to levels they could not afford. *Id*. ¶ 17.

Plaintiff claims defendant's fraud was made possible by certain statements defendant conveyed through its "Long Term Care Insurance Personal Worksheet." *Id*. ¶ 19. Specifically, the Worksheet stated: (1) "The company has a right to increase premiums in the future"; (2) "The company has sold long term care insurance since 1965 and has sold this policy since 1998"; (3) "The company has not raised its rates for this policy"; (4) "However, the company did raise rates by 15% in 1995 on long term care policies sold seven to 12 years ago that provided essentially similar coverage"; and (5) "Have you considered whether you could afford to keep this policy if the premiums were raised, for example, by 20%?" *Id*. ¶¶ 19–20, 63. Plaintiff claims defendant knew that future premium increases would occur and would far exceed 20%. *Id*. ¶ 21. Defendant did not disclose this information to potential customers, allegedly because it knew that doing so would dissuade them from buying the policy. *Id*. ¶ 22.

Relying on the information defendant set forth in its Worksheet, plaintiff purchased a policy in 2002. *Id*. ¶ 23. Eleven years later—once a 10-year rate-lock period had expired—plaintiff received notice from defendant saying her semi-

annual premium was increasing by 76.50%. *Id.* ¶ 24. Plaintiff filed this suit in response.

Plaintiff's First Amended Complaint, which she purports to bring on behalf of a nationwide class of similarly situated individuals, alleges claims for "Fraudulent Misrepresentation & Omission," "Negligent Misrepresentation," "Fraud," "Unjust Enrichment," and "Deceptive Trade Practices Acts." *See* [23].[1]

Defendant moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all counts for failure to state a claim.

## III. Analysis

### A. Fraudulent Misrepresentation and Common Law Fraud

In Count I, plaintiff alleges a claim for fraudulent misrepresentation under Illinois law. Count III, which plaintiff titled "Fraud," is substantively the same as Count I. Both claims are common law fraud claims under Illinois law. The elements for common law fraud are: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008); *Connick v. Suzuki Motor Company, Ltd.*, 174 Ill.2d 482, 496 (1996).

Plaintiff alleges that the five statements from defendant's Worksheet—"and the inferences they created"—constituted a false statement of material fact

---

[1] Jurisdiction arises under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2)(A).

4

intended to mislead plaintiff. [23] ¶ 64. Without more, however, these five statements—really four statements and a question—do not amount to a *false* statement of material fact. Plaintiff does not allege anything to the effect of: (1) the company did not actually have a right to increase premiums; (2) the company has not actually sold long-term care insurance since 1965 or the subject policy since 1998; (3) the company actually did raise rates for the subject policy before plaintiff bought it; (4) the company did not actually raise rates by 15% in 1995 on a similar policy; or (5) plaintiff should not have considered whether she could have afforded to keep the policy if the premiums were raised, for example, by 20%.

Plaintiff's theory appears to be that by mentioning any figure at all, defendant committed itself to premium increases in that ballpark alone. False promises can be fraudulent. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 168 (1989). This theory fails in this case, however, because the statements contained in the Worksheet were not of the type from which "fraud is the necessary or probable inference." *Connick*, 174 Ill.2d at 496–97. While plaintiff is entitled to all reasonable inferences at this stage of the litigation, *see Looper Maintenance Service Inc. v. City of Indianpolis*, 197 F.3d 908, 913–14 (7th Cir. 1999), it would not be reasonable to infer fraud from these statements. As defendant notes, the hypothetical of a potential 20% increase in premiums is taken directly from an Illinois Department of Insurance regulation mandating the content of the Worksheet. *See* 50 Ill. Admin. Code 2012.123(c)(2) (West 2002); 50 Ill. Admin. Code 2012 Ex. F (West 2002). With that regulatory backdrop, which plaintiff does not

dispute, it would not be reasonable to infer that defendant was falsely promising to never raise premiums beyond 20%. The complaint certainly alleges that defendant knew it would raise premiums significantly more than 20%, but the hypothetical question cannot be read as a limit on its discretion or as a promise of any kind. Defendant advised plaintiff that it had the ability to raise premiums (without any qualification), and the regulatory context of the 20% hypothetical makes unreasonable plaintiff's inference that it was a false lulling technique. The complaint does not adequately allege that defendant falsely promised to limit its premium increases. To the contrary, the complaint's allegations make it clear that defendant made no such promise at all.[2]

Plaintiff's fraudulent misrepresentation and common law fraud claims are dismissed.

### B. Fraudulent Omission

Counts I and III also contain claims for fraudulent omission (also known as "fraudulent concealment"). In order to state a claim for fraudulent omission, a plaintiff must allege the defendant concealed a material fact he was under a duty to disclose. *Connick*, 174 Ill.2d at 500. A duty to disclose arises in one of several ways. *Id*. First, a duty arises if the parties have a fiduciary or confidential relationship as a matter of law, as with attorneys and clients; principals and agents; or guardians and wards. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865 ¶ 59. Second, "[w]here

---

[2] Even if the Worksheet could plausibly be read to contain a false statement of material fact, plaintiff has not pled facts that allow an inference of justifiable reliance on that statement, given the disclaimers contained in both the Worksheet and the application. *See Davis v. G.N. Mortgage Co.*, 396 F.3d 869, 882–83 (7th Cir. 2005).

6

a fiduciary or confidential relationship does not exist as a matter of law . . . a duty to [disclose] may arise from a relationship in which the defendant is placed 'in a position of influence and superiority over [the] plaintiff' by reason of 'friendship, agency, or experience.'" *Id.* (quoting *Connick*, 174 Ill.2d at 500). Third, if no fiduciary or confidential relationship exists at all, a duty arises when a defendant presents a half-truth as the full truth. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397–98 (7th Cir. 2009).

For good reason, plaintiff does not argue that a fiduciary or special relationship applied as a matter of law. *See Crichton*, 576 F.3d at 397–98 (an insurer owes no fiduciary duty to its insured as a matter of law). Instead, plaintiff claims the duty arose from defendant being placed in a position of influence and superiority over her. Plaintiff points to allegations that (1) she was 68 years old when she bought the policy; (2) her highest level of education was high school; (3) she had no experience with long-term care insurance; (4) she relied on, and placed her trust in, defendant based on its highly touted experience in the long-term care insurance market place; and (5) the Worksheet contained questions for plaintiff to consider in determining whether she could afford the policy. [32] at 8–9.

These allegations do not state a duty to disclose. If a fiduciary or special relationship were to arise from these allegations, it would also arise anytime an established insurer sold a policy to an elderly person who was not sophisticated in the ways of insurance and that insurer complied with Illinois's "suitability" regulations. Such a holding would contradict Illinois's rule against insurers being

7

fiduciaries as a matter of law. *See Crichton*, 576 F.3d at 397–98; *Nielsen v. United Services Automobile Association*, 244 Ill. App. 3d 658, 666 (2d Dist. 1993). Further, the Seventh Circuit has previously rejected a materially similar argument. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571–73 (7th Cir. 2012).

Next, plaintiff says the statements from the Worksheet constituted half-truths that defendant presented as the full truth. *Crichton* also featured an insured-plaintiff claiming an insurance company omitted information that would have revealed an inevitable premium hike. 576 F.3d at 397–98. The Seventh Circuit affirmed dismissal of the claim because, as here, the plaintiff's "allegations do not remotely suggest that any of [the insurer's communications] purported to be an explanation of all of the underwriting factors that might affect [the insured's] insurance premiums." *Id.* at 398.

Plaintiff's fraudulent omission claims are dismissed.

### C. Negligent Misrepresentation

Count II alleges a claim for negligent misrepresentation. To state a claim for negligent misrepresentation under Illinois law, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. *First Midwest Bank, N.A. v. Stewart Title Guarantee Co.*, 218 Ill.2d 326, 334–35 (2006). As already

8

discussed, plaintiff has not alleged a false statement of material fact and thus her negligent misrepresentation claim fails as well.

Count II fails for an additional reason. A duty to communicate accurate information arises only if the defendant "is in the business of supplying information for the guidance of others in their business transactions." *Id*. at 335. Plaintiff says defendant was in such a business because, when it sold her the policy at issue, defendant "undertook to provide [plaintiff] with information," including the five statements from the Worksheet and information about the general benefits of long-term care insurance. [32] at 13–14. Plaintiff says these allegations suffice under *First Midwest* to show the required duty. They do not.

In *First Midwest*, the Illinois Supreme Court made clear that the duty to communicate accurate information does not apply simply because a defendant regularly supplies information ancillary to the sale of a product. 218 Ill.2d at 339. In that case, an insurer-defendant conveyed some information about a property's title in a title commitment, which is a kind of policy. *Id*. at 340. The commitment did not contain, or purport to contain, "a listing of all defects, liens, and encumbrances affecting title to the property . . . ." *Id*. at 341. Nor did the commitment "contain any guarantee concerning the performance of a title search." *Id*. Given these factors, the Illinois Supreme Court concluded that the insurer was not in the business of supplying information. *Id*.

Here, as in *First Midwest*, the information defendant allegedly conveyed was merely ancillary to the sale of a product. The information was part-advertisement,

9

part-list of general considerations for would-be insureds. While defendant was required to supply certain information, in a certain form, to plaintiff, its business was to sell an insurance policy, not to provide insurance advice. Defendant was therefore not in the business of supplying information.

Plaintiff's negligent misrepresentation claim is dismissed.

**D.     Unjust Enrichment**

In Count IV, plaintiff pleads a claim for unjust enrichment. "The theory of unjust enrichment is an equitable remedy based upon a contract implied in law." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (1st Dist. 2005) (quotation omitted). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Id*. "In other words, where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id*. (quotation omitted). Although a plaintiff can plead unjust enrichment in the alternative, it must not include allegations of an express contract. *Id*.[3]

Here, Count IV includes numerous references to the parties' insurance contract. *See e.g.*, [23] ¶¶ 82–84, 86–87. Plaintiff's unjust enrichment claim is therefore dismissed.

---

[3] Defendant argues that, under *Guinn*, an alternatively-pled unjust enrichment claim is undone only when a claim for breach of contract is pled as well. [32] at 20–21. That is not a fair reading of *Guinn*, which plainly turned only on the presence of allegations of the retail installment contract. *See* 361 Ill. App. 3d at 604.

### E. Consumer Fraud and Deceptive Business Practices

Count V contains claims under the consumer fraud statutes of all 50 states and the District of Columbia; though the parties' briefs discussed only Illinois law. This seems appropriate since the record reveals no connection between plaintiff and any other state.

The elements of a claim under the Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq.*) are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick*, 174 Ill2d. at 501. Defendant says plaintiff failed to plead a deceptive act or practice because the Worksheet made clear that defendant had the right to raise premiums. Plaintiff did not respond to this argument, which forfeits the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

In any event, the Seventh Circuit has held that "when analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortgage Co.*, 396 F.3d 869, 884 (7th Cir. 2005). An act will not be said to be deceptive when the plaintiff is explicitly alerted to the complained of result. *See id.* (lender's act of allegedly tricking borrower into signing 5-year agreement—instead of 2-year one— was not deceptive since the signed agreement plainly stated its term).

Here, the Worksheet was explicit: "The company has a right to increase premiums in the future." No part of the Worksheet limited this right in any way.

Even considering the Worksheet's other statements, including the allusion to a hypothetical scenario where the premiums would be raised by 20%, the totality of the information made available to plaintiff does not permit the conclusion that defendant violated the Illinois Consumer Fraud Act.

Defendant also argues that its conduct cannot support a claim for consumer fraud because it is exempted from the Act. Section 10b specifically excludes "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b. The Illinois Supreme Court has held that the breadth of this exception depends on the nature of the claimed fraud. *See Price v. Philip Morris, Inc.*, 219 Ill.2d 182, 249 (2005). Where the fraud was a failure to make additional disclosures, a defendant's full compliance with applicable disclosure requirements constitutes a full defense. *Id*. By contrast, where the fraud was "active and direct," a defendant must demonstrate that its conduct was affirmatively and specifically authorized by the relevant regulatory body. *Id*. at 249–53.

Read liberally, plaintiff's consumer fraud claim is premised on both the language contained in the Worksheet and the initial pricing of the policy. *See* [32] at 17 (arguing that plaintiff's "claims extend beyond the four corners of the Worksheet"). The safe harbor provision plainly exempts the Worksheet from the Act, since it both complied with and was specifically authorized by 50 Ill. Admin. Code 2012.123 and Exhibit F. The same cannot be said, however, for defendant's

12

allegedly deceptive pricing of its policy—which the Department of Insurance did not specifically authorize under those cited provisions. Be that as it may, this latter version of plaintiff's consumer fraud claim still remains implausible in light of defendant's multiple disclaimers that premiums might increase. *See Davis*, 396 F.3d at 884.

Plaintiff's consumer fraud claim is dismissed.

### IV. Conclusion

Defendant's motion to dismiss [28] is granted, and the First Amended Complaint is dismissed without prejudice. Plaintiff's motion to certify a class [9] is denied as moot. Plaintiff is given leave to file a second amended complaint by 9/8/15. If plaintiff elects not to file a second amended complaint, this dismissal will automatically convert to a dismissal with prejudice and judgment will be entered in favor of defendant. A status hearing is set for 9/9/15 at 9:30 a.m.

ENTER:

Manish S. Shah
United States District Judge

Date: 8/18/15