UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOPHIE P. TOULON,

    Plaintiff,

  v.

CONTINENTAL CASUALTY COMPANY,

    Defendant.

No. 15 CV 138

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Sophie Toulon's first amended complaint alleged that defendant Continental Casualty Company committed fraud when it sold her an insurance policy. That complaint was dismissed for failure to state a claim, [40], and Toulon filed a second amended complaint, again asserting that Continental committed fraud. The gist of Toulon's theory remains the same, and Continental moves once again to dismiss. For the following reasons, the motion is granted and the complaint is dismissed with prejudice.

### I.    Legal Standard

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The plausibility test does not permit a court to disregard factual allegations simply because they seem unlikely. *Firestone Financial Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015). Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must do so with particularity, which generally means a plaintiff must plead "the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737.

## II. Background

In 1998, defendant Continental Casualty Company introduced long-term care insurance policies under the series name "Preferred Solution." [43] ¶ 2.[1] Plaintiff Sophie Toulon—a Preferred Solution subscriber—alleges Continental used intentionally unreasonable "lapse rate" assumptions to make the policies seem more affordable than they were. *Id.* ¶ 16. By setting initial premiums at artificially low rates, Continental could sell lower-income insureds policies they could not afford, and collect premiums from them while they were unlikely to file claims. *Id.* ¶¶ 17, 63. Once these insureds became more likely to make claims, Continental drove them out of the policies by increasing premiums to levels they could not afford. *Id.* ¶ 18.

Toulon claims Continental's fraud was made possible by certain statements it conveyed through the documentation it provided to Toulon. Specifically, its "Notice

---

[1] Bracketed numbers refer to entries on the district court docket.

to Applicant Regarding The Long Term Care Insurance Personal Worksheet"

stated:

> (1) "CNA has established some reasonable guidelines to help you in your considerations";
> (2) "A rule of thumb that might be considered is that annual premiums in excess of 7% of your income or 3% of your assets may adversely affect your standard of living";
> (3) "If you are buying this policy to protect your assets and your assets are less than $30,000.00, you may wish to consider other options for financing your long term care";
> (4) "While the purchase of long term care insurance can help you maintain your independence, help preserve your assets, and give you more freedom of choice as to nursing home or other care providers, you would you would be ill advised to purchase any policy that would create a financial hardship for you"; and
> (5) "Your ability to pay the initial premium and renewal premiums must be taken into account in your decision to buy."

*Id*. ¶¶ 21, 85. Continental's "Long Term Care Insurance Personal Worksheet" stated:

> (1) "The company has a right to increase premiums in the future";
> (2) "The company has sold long term care insurance since 1965 and has sold this policy since 1998";
> (3) "The company has not raised its rates for this policy";
> (4) "However, the company did raise rates by 15% in 1995 on long term care policies sold seven to 12 years ago that provided essentially similar coverage"; and
> (5) "Have you considered whether you could afford to keep this policy if the premiums were raised, for example, by 20%?"

*Id*. ¶¶ 26–27, 86. And the "Traditional Long Term Care Insurance Policy" itself stated:

> (1) "However, We may change the premium rates"; and
> (2) "PREMIUMS SUBJECT TO CHANGE."[2]

---

[2] The complaint contradicts itself by alleging at times that the Policy contains only one reference to future premium changes, [43] ¶¶ 24, 91, and at other times that the Policy contains two different references. *Id*. ¶¶ 76, 163. The Policy is an exhibit to the complaint

3

[43-2] at 13. Toulon claims Continental knew that future premium increases would occur and would far exceed 20%. [43] ¶ 32. Continental did not disclose this information to potential customers, allegedly because it knew that doing so would dissuade them from buying the policy. *Id.* ¶¶ 23, 25, 29.

Relying on the information Continental set forth in its documentation, Toulon purchased a policy in 2002. *Id.* ¶ 30. Eleven years later—once a 10-year rate-lock period had expired—Continental told Toulon that her semi-annual premium was increasing by 76.50%. *Id.* ¶ 32. Toulon filed this suit in response.

Toulon's second amended complaint, which she purports to bring on behalf of a nationwide class of similarly situated individuals, alleges claims for "Fraudulent Misrepresentation," "Fraudulent Omissions," "Unjust Enrichment," and "Consumer Fraud Acts / Deceptive Trade Practices Acts." *See* [43]. Jurisdiction arises under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2)(A).

Despite surpassing its predecessor by 16 pages in length, the second amended complaint does not differ substantially from the first. But Toulon does include a few new allegations. Most importantly, the statements from the Notice and Policy that Toulon identifies as misleading did not appear in the first amended complaint. *See* [23]. And Toulon newly alleges that both the initial premium and one of the statements from the Policy, and not just the statements from the Worksheet, are false statements of material fact. [43] ¶¶ 91–92, 96. Toulon also alleges that the Worksheet omits several statements that were mandated by an Illinois Department

---

and therefore part of the pleadings. Fed. R. Civ. P. 10(c). It includes the two statements noted above, both of which will be considered.

of Insurance regulation. *Id.* ¶ 72. Finally, Toulon no longer brings a claim for "Negligent Misrepresentation." The remaining amendments to Toulon's previous complaint relate more to form than substance, or are otherwise immaterial.

## III. Analysis

### A. Fraudulent Misrepresentation

In Count I, Toulon alleges a claim for fraudulent misrepresentation under Illinois law. The elements for fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008); *Connick v. Suzuki Motor Company, Ltd.*, 174 Ill.2d 482, 496 (1996).

Toulon identifies as false statements of material fact, with which Continental intended to mislead her, the statements from Continental's Worksheet, one of the statements from the Policy ("However, We may change the premium rates"), and the initial premium itself. [43] ¶¶ 88–89, 92, 96. In her response brief, Toulon includes an additional allegation that the line from the Policy, "PREMIUMS SUBJECT TO CHANGE," is another false statement of material fact. [51] at 3. Putting aside "the axiomatic rule that a plaintiff may not amend [her] complaint in [her] response brief," *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011), this claim fails because none of the statements identified can be considered false. As in her first amended complaint,

5

Toulon does not allege anything to the effect of: (1) the company did not actually have a right to increase premiums; (2) the company has not actually sold long-term care insurance since 1965 or the subject policy since 1998; (3) the company actually did raise rates for the subject policy before Toulon bought it; (4) the company did not actually raise rates by 15% in 1995 on a similar policy; (5) Toulon should not have considered whether she could have afforded to keep the policy if the premiums were raised, for example, by 20%; (6) the company may not change the premium rates; (7) the premium was somehow not the premium;[3] or (8) premiums are not subject to change.

Toulon argues extensively that by presenting to her the possibility of an increase in her premium, Continental misled her as to both the probability and magnitude of such an increase. *Id*. at 5. Toulon's first contention—that Continental misrepresented the certainty of a premium increase by calling it a possibility—requires an unreasonable logical leap and cannot be the basis for a fraudulent misrepresentation claim. Disclosing a nonspecific possibility of a future premium increase does not falsely represent the actual chances of an increase in the future.

Toulon's second contention—that Continental misrepresented a significant future premium increase as one in the 15% to 20% range—seems to be founded on the theory that by mentioning any figure at all, Continental committed itself to premium increases in that ballpark alone. Although Toulon insists otherwise, this sounds like a misrepresentation of future conduct. And a misrepresentation of

---

[3] It is unclear what additional fact Toulon could plausibly allege to show that the initial premium itself was false.

future conduct can constitute fraud if that misrepresentation is "alleged to be the scheme employed to accomplish the fraud." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 168 (1989) (quotation omitted). The complaint here adequately alleges that Continental's suggestion of premium amounts was the scheme used to lull Toulon into buying insurance. But whether Toulon is alleging a misrepresentation of an existing fact or of future conduct, the theory fails for the same reason it failed in the first amended complaint: the statements contained in the Worksheet and Policy were not of the type from which "fraud is the necessary or probable inference." *Connick*, 174 Ill.2d at 496–97. The hypothetical of a potential 20% increase in premiums is taken directly from an Illinois Department of Insurance regulation mandating the content of the Worksheet.[4] *See* 50 Ill. Admin. Code 2012.123(c)(2) (West 2002); 50 Ill. Admin. Code 2012 Ex. F (West 2002). With that regulatory backdrop, it would not be reasonable to infer that Continental was falsely promising to never raise premiums beyond 20%. Continental advised Toulon that it had the ability to raise premiums (without any qualification), and the regulatory context of the 20% hypothetical makes unreasonable Toulon's inference that it was a false lulling technique. As before, the complaint does not adequately allege that Continental falsely promised to limit its premium increases. To the

---

[4] As Toulon correctly points out, the regulation does not *compel* inclusion of the hypothetical question. But it does offer it. She also points out that the regulation does compel three statements that are missing from the Worksheet: two statements concerning inflation protection and a confirmation that the insured understands that premiums might increase. Toulon does not allege, however, that she would have chosen a different course of action had those statements been included.

contrary, the complaint's allegations make it clear that Continental made no such promise at all.[5]

Toulon's fraudulent misrepresentation claim is dismissed.

## B.    Fraudulent Omission

Count II contains a claim for fraudulent omission (also known as "fraudulent concealment"). The analysis of this claim is the same as it was in the first amended complaint (and largely repeated verbatim here). In order to state a claim for fraudulent omission, a plaintiff must allege the defendant concealed a material fact he was under a duty to disclose. *Connick*, 174 Ill.2d at 500. A duty to disclose arises in one of several ways. *Id.* First, a duty arises if the parties have a fiduciary or confidential relationship as a matter of law, as with attorneys and clients; principals and agents; or guardians and wards. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865 ¶ 59. Second, "[w]here a fiduciary or confidential relationship does not exist as a matter of law . . . a duty to [disclose] may arise from a relationship in which the defendant is placed 'in a position of influence and superiority over [the] plaintiff' by reason of 'friendship, agency, or experience.'" *Id.* (quoting *Connick*, 174 Ill.2d at 500). Third, if no fiduciary or confidential relationship exists at all, a duty arises when a defendant "makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397–98 (7th Cir. 2009).

---

[5] Toulon again has not pled facts that allow an inference of justifiable reliance on that statement, given the disclaimers contained in both documents. *See Davis v. G.N. Mortgage Co.*, 396 F.3d 869, 882–83 (7th Cir. 2005).

8

The parties unquestionably do not have a fiduciary or special relationship as a matter of law, and Toulon does not argue otherwise. *See Crichton*, 576 F.3d at 397–98. Instead, Toulon claims the duty arose from Continental being placed in a position of influence and superiority over her. Toulon alleges that (1) she was 68 years old when she bought the policy; (2) her highest level of education was high school; (3) she had no knowledge related to long-term care insurance or the pricing of premiums; (4) she relied on, and placed her trust in, Continental based on its highly touted experience in the long-term care insurance market place; and (5) the Notice and Worksheet contained guidelines and questions for Toulon to consider in determining whether she could afford the policy. [43] ¶¶ 100–114.

These allegations do not state a fiduciary or special relationship giving rise to a duty to disclose. If they did, then any insurer that complied with Illinois's disclosure requirements would find itself in such a relationship with every elderly insured who had been unsophisticated in the ways of insurance at the time of purchase. Such a holding would contradict Illinois's rule against insurers being fiduciaries as a matter of law. *See Crichton*, 576 F.3d at 397–98; *Nielsen v. United Services Automobile Association*, 244 Ill. App. 3d 658, 666 (2d Dist. 1993). Further, the Seventh Circuit has previously rejected a materially similar argument. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571–73 (7th Cir. 2012).

Next, Toulon says many of the statements from the Notice, Worksheet, and Policy constituted half-truths that Continental presented as the full truth while omitting the material fact that premiums were certain to increase by over 20%.

9

*Crichton* also featured an insured-plaintiff claiming an insurance company had lured him into buying insurance with an artificially low premium and omitted information that would have revealed an inevitable premium hike.[6] 576 F.3d at 397–98. The Seventh Circuit affirmed dismissal of the claim because, as here, the plaintiff's "allegations do not remotely suggest that any of [the insurer's] communications] purported to be an explanation of all of the underwriting factors that might affect [the insured's] insurance premiums." *Id*. at 398. And even though Toulon includes more statements in the second amended complaint than she did in the first—specifically, the statements from the Notice and the Policy—they do not cure the deficiencies found in the first amended complaint (and which the Seventh Circuit found in the *Crichton* complaint). The statements cannot be read to be a comprehensive, whole-truth representation of how Continental prices its premiums.

Toulon's fraudulent omission claims are dismissed.

### C. Unjust Enrichment

In Count III, Toulon pleads a claim for unjust enrichment. "The theory of unjust enrichment is an equitable remedy based upon a contract implied in law." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (1st Dist. 2005) (quotation omitted). "Because it is an equitable remedy, unjust enrichment is only available

---

[6] Toulon attempts to distinguish *Crichton* by claiming, without explanation, that the statements and omissions in that case were less misleading because they did not "directly implicate" premium rate increases. [51] 9–10. But the representations and omissions alleged in *Crichton* explicitly reference premium rate increases, which are at the heart of the claims in that case. 576 F.3d at 398. That is no less direct than what Toulon alleges here.

10

when there is no adequate remedy at law." *Id*. "In other words, where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id*. (quotation omitted). Although a plaintiff can plead unjust enrichment in the alternative, it must not include allegations of an express contract. *Id*.

Count III is replete with references to the contract between the parties. *See e.g.* [46] ¶¶ 126–128, 130–131. That alone warrants dismissal of this claim, as it did with the first amended complaint.[7] Even if the claim did not include explicit references to the contract which governs the parties' relationship, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Thus, if the unjust enrichment claim is founded on fraudulent conduct, the claim will fail if "the underlying claim for fraud is deficient." *Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 631 (1st Dist. 2008).

Toulon's "theory of unjust enrichment is based on Continental's fraudulent conduct and its violations of the [Illinois Consumer Fraud Act]." [51] at 10. As explained above and below, Toulon's other claims are deficient and must be dismissed. The unjust enrichment claim is dismissed, as well.

---

[7] Toulon argues that so long as she does not allege a claim for breach of contract, her unjust enrichment claim can stand. But *Guinn* makes clear that allegations of an express contract governing the relationship of the parties are enough to dismiss a claim for unjust enrichment, regardless of the claims asserted. 361 Ill.App.3d at 604.

11

**D. Consumer Fraud and Deceptive Business Practices**

Count IV contains claims of consumer fraud and unfair practices under the Illinois Consumer Fraud Act. Toulon also alleges violations of the consumer fraud statutes of the other 49 states and the District of Columbia, but she has no discernible connection to those jurisdictions, and the parties address only the Illinois Consumer Fraud Act in their briefs.

*1. Consumer Fraud Claims*

To state a cause of action for consumer fraud under the Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq*.) a plaintiff must plead three elements: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick*, 174 Ill.2d. at 501. The claim "must be pled with the same particularity and specificity as that required under common law fraud." *Id*. The Seventh Circuit has held that "when analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortgage Co.*, 396 F.3d 869, 884 (7th Cir. 2005). An act will not be said to be deceptive when the plaintiff is explicitly alerted to the complained of result. *See id*.

Here, the Policy explicitly stated both (1) "PREMIUMS SUBJECT TO CHANGE" and (2) "However, We may change the premium rates." And the Worksheet explicitly warned Toulon that "[t]he company has a right to increase premiums in the future." Toulon fails to allege any statement or representation by

Continental that limited that right in any way. Instead, Toulon argues that the two warnings in the Policy, which she identifies as fraudulent statements, deceived her into thinking that future premium increases were both unlikely and limited. But even considering the rest of the statements in the Notice and the Worksheet, including the allusion to a hypothetical scenario where the premiums would be raised by 20%, the totality of the information made available to Toulon does not permit the conclusion that Continental violated the Illinois Consumer Fraud Act by way of a deceptive act.

Toulon also argues that Continental violated the Illinois Consumer Fraud Act by concealing the facts that the initial premium was artificially low and would eventually increase by more than 20%. Under the Illinois Consumer Fraud Act, an "omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Connick*, 174 Ill.2d. at 504. "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 174 Ill.2d. at 505. Under the statute, "it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment." *Id*.

Toulon certainly alleges that foreknowledge of a premium increase due to Continental's pricing methodology is a material fact. But she still fails to allege that that fact was concealed or omitted. As discussed above, Continental did provide explicit warnings that the premiums could increase without limitation.

13

Continental's failure to be more specific in its warnings does not constitute a violation of the Illinois Consumer Fraud Act.

### 2. Unfair Practice Claim

Finally, Toulon alleges that Continental's conduct—the same conduct alleged in support of her fraud claims—is unfair in violation of the Illinois Consumer Fraud Act. To determine whether conduct is unfair, Illinois courts consider three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417–418 (2002) (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. A cause of action for unfair practices under the Illinois Consumer Fraud Act "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). As a result, "the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative." *Id*.

The first factor—whether Continental's conduct offends public policy—weighs in favor of Continental. In the complaint, Toulon alleges nothing more than the statement: "The above-described deceptive and unfair acts offend public policy and

14

cause substantial injury to consumers." [43] ¶ 170. And Toulon makes no argument in her response brief after elaborating upon the standard: "[a] practice can offend public policy if it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations." [51] at 17 (quoting *W. Ry. Devices Corp. v. Lusida Rubber Products, Inc.*, 2006 WL 1697119, at *4 (N.D.Ill. June 13, 2006)). As Continental points out, many of the statements identified as misleading were taken directly from a statute governing insurance disclosures. *See* 50 Ill. Admin. Code 2012.123(c)(2) (West 2002); 50 Ill. Admin. Code 2012 Ex. F (West 2002). In addition, both parties freely entered into a contract, which Continental is not alleged to have breached, giving Continental the right to increase the premium. In light of those facts and Toulon's lack of supporting argument, the conduct as alleged is not offensive to public policy.

The second and third factors weigh in favor of Continental, as well. A practice is immoral, unethical, oppressive, or unscrupulous if it is "so oppressive as to leave the consumer with little alternative except to submit to it." *Robinson*, 201 Ill.2d at 418 (2002). Further, the conduct must "injure the consumer." *Id*. Toulon argues that Continental's conduct imposed the unreasonable burden of having to choose between three options: (1) pay a substantially higher premium; (2) accept diminished benefits; or (3) lose her coverage. She adds that these choices constitute her injury, as well, although she cites to no allegation under this count. The Seventh Circuit affirmed dismissal of a case where a mortgage lender imposed on the plaintiff a fee that it had the contractual right to impose, even if the plaintiff's

15

noncompliance risked a declaration of default on her loan. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 610 (7th Cir. 2013). The court declared that "there is nothing oppressive or unscrupulous about giving a counterparty the choice to fulfill his contractual duties or be declared in default for failing to do so." *Id*. Toulon does not allege that the contract is unconscionable or that Continental attempted to do anything other than that which it was contractually entitled to do. For those reasons, the alleged conduct cannot be considered oppressive or injurious.

Toulon's claims under the Illinois Consumer Fraud Act are dismissed.[8]

## IV. Conclusion

Continental's motion to dismiss [49] is granted, and the Second Amended Complaint is dismissed with prejudice. The clerk shall enter judgment in favor of defendant and terminate this case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 2/12/16

---

[8] The parties also dispute whether Continental's conduct is exempted from the Illinois Consumer Fraud Act by Section 10b, which excludes "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b. Continental argues that Illinois Department of Insurance regulations authorized many of its statements, and any mandated statements it failed to make did not proximately cause Toulon's injury. Toulon contends that the provision does not apply to those statements because Continental did not fully comply with the regulations, and that Continental made several unauthorized statements that are nonexempt. These arguments are not addressed here because they are ancillary to the main arguments, and because the complaint fails to state a claim as discussed above.